John H. WILLIAMS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A04–0706–CR–311.

Court of Appeals of Indiana.

Dec. 12, 2007.

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attor-ney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

John Williams appeals his convictions for two counts of resisting law enforcement. We affirm.

### Issue

The sole issue is whether the trial court erred in denying Williams' motion to strike the jury panel.

### Facts

On April 3, 2006, the State charged Williams with one count of Class D felony resisting law enforcement and one count of Class A misdemeanor resisting law enforcement. Williams' jury trial was scheduled for March 8, 2007. Thirty jurors were called to appear that day, but only twenty showed up.

Williams, who is African–American, moved to strike the jury panel because it included no African–Americans. The trial court denied the motion. Williams was convicted as charged, and he now appeals.

### Analysis

▮▮▮ Williams contends the jury panel failed to reflect a fair cross-section of the St. Joseph County community, which has an African–American population of approximately ten percent. The selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial. *Wilder v. State*, 813 N.E.2d 788, 791 (Ind.Ct.App.2004), *trans. denied* (citing *Taylor v. Louisiana*, 419 U.S. 522, 528, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975)).[1] There is no requirement, howev-

---

1. Our supreme court partially disapproved of *Wilder* on an issue unrelated to jury selection in *Laux v. State*, 821 N.E.2d 816, 820 n. 4 (Ind.2005).

er, that jury panels be a microcosm of a county or a court district. *Id.* Jurors need not be mathematically proportioned to the character of the community. *Id.* The primary concern is that juror selection not be arbitrary. *Id.*

■ Williams claims he has made a prima facie showing of a violation of the fair cross-section requirement. To make such a showing, a defendant bears the burden of establishing:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Dye v. State,* 717 N.E.2d 5, 19 (Ind.1999), *cert. denied* (quoting *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979)). If a defendant has made a prima facie showing of a fair cross-section violation, the State may still justify the juror selection process by showing that attainment of a fair cross-section is incompatible with a significant state interest. *Wilder,* 813 N.E.2d at 791–92.

The State readily concedes that African–Americans are a "distinctive" group in the community, thus satisfying the first *Duren* criteria. As for whether the zero percent representation of African–Americans in Williams' jury pool was fair and reasonable, as compared to the approximate ten percent African–American population of St. Joseph County, we must keep in mind that ten out of the thirty people summonsed for jury duty in Williams' case failed to appear in court. There is no evidence in the record as to the race of any of the ten no-shows. It is difficult to assess whether St. Joseph County's juror selection system is flawed and unreasonably excludes African–Americans when one-third of those summonsed for jury duty failed to appear.

■ In any event, we conclude Williams has failed to meet his burden of establishing that any underrepresentation of African–Americans in his jury panel was due to the systematic exclusion of African–Americans in the St. Joseph County jury selection process. To prove systematic exclusion, a defendant must demonstrate that a large discrepancy between the percentage of a certain group in the community and the percentage of that group in jury panels occurs "not just occasionally," but on a regular basis. *See Duren,* 439 U.S. at 366, 99 S.Ct. at 669. Before the trial court, defense counsel stated, "I guess there is no hard evidence, but it seems that it is a pattern that continues to be repeated and it's noted by people who make observations of these things." Tr. p. 59. We believe this statement falls far short of proving systematic exclusion.

■ Also relevant to the systematic exclusion issue is whether a disproportionate and consistent exclusion of a particular group from jury panels can be traced to the system by which juries are selected. *See Duren,* 439 U.S. at 367, 99 S.Ct. at 670. Williams has failed to provide any evidence or explanation as to how St. Joseph County currently selects prospective jurors. In fact, defense counsel told the trial court, "right now I'm uncertain as to exactly what process they have been using." Tr. p. 59.

Additionally, this court three years ago in *Wilder* found no violation of the fair cross-section requirement in the manner in which St. Joseph County selects jury panels. *Wilder,* 813 N.E.2d at 793. Specifically, we held there was insufficient evidence of systematic exclusion of African–

Americans from St. Joseph County jury panels. *Id.* Williams has not attempted to explain why *Wilder* was incorrectly decided, or whether there is different evidence in his case that would lead to a different conclusion than we reached in *Wilder*. As such, we reach the same conclusion today: Williams has failed to prove that African–Americans are systematically excluded from St. Joseph County jury panels and, therefore, has not established a prima facie violation of the fair cross-section requirement.

### Conclusion

The trial court properly denied Williams' motion to strike his jury panel. We affirm his convictions.

Affirmed.

SHARPNACK, J., and VAIDIK, J., concur.